IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALBERS FINISHING & SOLUTIONS, LLC,

    Plaintiffs,

v.                                                  Case No. 18-1225-JWB

RK INC.,

    Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Plaintiff Albers Finishing & Solutions' motion to dismiss Defendant RK Inc.'s counterclaims. (Doc. 25.) The motion has been fully briefed and is ripe for decision. (Docs. 26, 27, 28, 29.) The motion is DENIED for the reasons set forth herein.

**I.    Procedural History and Relevant Facts[1]**

Albers Finishing & Solutions, LLC ("AFS") is a Kansas limited liability company with all members being citizens of Kansas. (Doc. 20.) AFS's principal place of business is in Cheney, Kansas. Defendant RK Inc. ("RK") is a Missouri corporation with its principal place of business in West Plains, Missouri. AFS is in the business of painting and finishing metallic parts for use in the aerospace and agriculture industries. RK is in the business of manufacturing, installing and servicing complete surface finishing and processing equipment. (Doc. 1, Exh. 1 at 2.)

In February 2016, RK issued quotes to AFS for the manufacture and installation of the Zinc Plate Process ("Zinc Line") and manufacture and installation of the Anodize System ("Anodize

---

[1] All facts are viewed in the light most favorable to RK. A majority of the facts set forth herein are largely taken from this court's previous memorandum and order denying RK's motion to dismiss. (Doc. 22.) In their respective memoranda, both parties cite this court's factual findings from the previous order. (Docs. 28 at 5; 29 at 7.) Therefore, the court finds that the parties do not object to the court's use of the previous factual determinations in ruling on the instant motion. *See Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 927 (D. Kan. 2007) (court may take judicial notice of previous court records.)

Line"). In November 2016, AFS issued purchase orders to RK for the purchase of a Zinc Line and purchase of the Anodize Line in accordance with the quotes. The purchase prices were $626,000 and $900,000, respectively. AFS made a payment to RK of $200,000. (Doc. 1, Exh. 1 at 3.)

AFS alleges that RK then agreed to complete the Zinc Line by December 2017 and the Anodize Line by January 2018. RK disputes these allegations. AFS further alleges RK also agreed to provide and install additional items, which would be paid for by AFS. AFS makes further allegations regarding advance payments but those allegations are also denied by RK. (*Id.* at 4-5; Doc. 8 at 2-3.)

RK performed the manufacturing work in Missouri and all components for the two lines were developed, manufactured, processed and shipped from Missouri. RK does not own any real or personal property in Kansas and does not maintain an office in Kansas. RK does not maintain any bank accounts in Kansas. (Doc. 22 at 2.)

RK delivered and installed the Zink and Anodize Lines at AFS's facility in Kansas. RK's president, Kevin Beauchamp, made multiple visits to the AFS facility in Kansas. RK's employees were sent to Kansas in order to install, test and service the equipment. RK also provided training to AFS's employees in Kansas on multiple occasions. (*Id.*)

AFS alleges that RK breached the contracts by failing to meet the deadlines, failing to complete both lines, and failing to provide additional items due under the contracts. AFS alleges that the Anodize Line has never been operational and that AFS has had to acquire replacement software for the Line. The Zinc Line is allegedly running at a loss because RK has failed to deliver the barrels, zinc chiller and other items that were ordered under the original contract. (Doc. 1, Exh. 1 at 4-6.)

RK denies most of the allegations set forth in AFS's complaint. RK alleges that AFS failed to make payments and is in default, voiding any deadlines, warranties and liquidated damages. RK alleges that it has fully performed under the agreement or has been prevented from performing due to AFS's actions. RK also alleges that the last act taken to bind the parties occurred in West Plains, Missouri. RK has asserted counterclaims of breach of contract and unjust enrichment against AFS due to AFS's alleged failure to pay amounts owed under the contract. (Doc. 8 at 7-14.)

AFS now moves to dismiss RK's counterclaims on the basis that RK does not have the capacity to bring an action against AFS in Kansas as RK was doing business in Kansas without authorization by the Kansas Secretary of State.

## II. Analysis

Foreign corporations, such as RK, are subject to various statutory provisions under Kansas law. A foreign corporation can be barred from bringing an action in Kansas. *See* K.S.A. 17-7307. The relevant statutory provision provides as follows:

> (a) A foreign corporation which is required to comply with the provisions of K.S.A. 17-7302 and K.S.A. 17-7930 through 17-7934, and amendments thereto, and which has done business in this state without authority shall not maintain any action or special proceeding in this state, unless and until such corporation has been authorized to do business in this state and has paid to the state all taxes, fees and penalties which would have been due for the years or parts thereof during which it did business in this state without authority. This prohibition shall not apply to any successor in interest of any such foreign corporation.
>
> (b) The failure of a foreign corporation to obtain authority to do business in this state shall not impair the validity of any contract or act of the foreign corporation or the right of any other party to the contract to maintain any action or special proceeding thereon, and shall not prevent the foreign corporation from defending any action or special proceeding in this state.

*Id.* This Kansas "closed-door statute prevents an out-of-state company doing business in Kansas without registering from 'maintain[ing]' a suit, but it doesn't explicitly bar it from *filing* one. Thus,

3

courts generally provide some time for the company to come into compliance before dismissing a suit, and if the company complies, the suit can still proceed to trial." *Douglas Landscape & Design, L.L.C. v. Miles*, 51 Kan. App. 2d 779, 787, 355 P.3d 700, 706 (2015) (emphasis in original).

AFS argues that RK's actions in Kansas amount to conducting business in the state without authority and therefore RK cannot maintain its counterclaims against AFS until RK registers for the time periods at issue and pays the back taxes and fees. Kansas law, however, does not require that all foreign businesses register with the state, but only those foreign entities "doing business in the state of Kansas," which is a separate legal question. K.S.A. 17-7931; *see Miles*, 51 Kan. App. at 783. In order to determine whether a foreign entity is doing business in Kansas, the Kansas Supreme Court has instructed courts to review the "facts in each individual case rather than [] the application of fixed or definite rules." *Haile Grp., LLC v. City of Lenexa*, 242 P.3d 1281, 2010 WL 4977221, *6 (Kan. Ct. App. Nov. 24, 2010) (citing *Toedman v. Nooter Corp.*, 180 Kan. 703, 707, 308 P.2d 138 (1957)). Additionally, Kansas law sets forth categories of activities that do "not constitute doing business within the meaning of K.S.A. 17-7931." K.S.A. 17-7932.

RK argues that its activities with respect to the contract at issue in this case are included in section 17-7932 and therefore, it does not need to register to do business in Kansas to maintain an action. AFS disagrees. Pursuant to section 17-7932, the following do not constitute doing business in Kansas:

***

(7) selling, by contract consummated outside the state of Kansas, and agreeing, by the contract, to deliver into the state of Kansas machinery, plants or equipment, the construction, erection or installation of which within the state requires the supervision of technical engineers or skilled employees performing services not generally available, and as part of the contract of sale agreeing to furnish such services, and such services only, to the vendee at the time of construction, erection or installation;

4

<pre>                                              ***</pre>
   (11) transacting business in interstate commerce.[2]

   In reviewing whether RK's actions constitute doing business in Kansas, the facts are viewed in the light most favorable to RK. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). RK has alleged that the last act to consummate the contract was taken outside of Kansas. The facts also show that RK constructed the lines in Missouri and then delivered them into Kansas to install. RK also utilized its employees in the installation of the lines. All of these activities fall under K.S.A. 17-7932(7).

   AFS argues, however, that RK's actions in "training" AFS's employees on the lines falls outside of the activities set forth in section 17-7932(7) and, therefore, RK has been doing business in Kansas. (Doc. 29 at 6.) The statutory language, however, does not state that the list of activities are all-inclusive. Rather, it is a non-exhaustive list. Therefore, pursuant to the statutory language and Kansas authority, the court is to utilize the facts of the individual case along with the statutory language to determine whether a foreign entity is doing business in Kansas. *See Haile Grp., LLC*, 2010 WL 4977221 at *6.

   In this action, the clear majority of RK's activities fall within section 17-7932(7). The only activity that does not fall within the statutory section is the training of AFS's employees on the use of the lines. AFS has not identified any authority that would support a finding that such activity, in isolation, constitutes doing business in Kansas within the meaning of K.S.A. 17-7931. Given the facts in this case, the court does not find that the additional activity of training on lines that were installed in Kansas constitutes doing business within the meaning of K.S.A. 17-7931. There is no indication in the record that the training was done pursuant to an additional contract or

---

[2] Although RK raises this factor as a basis, the court declines to address this subsection as RK has not sufficiently addressed this argument in its brief and other grounds exist to deny the motion.

separate fee charged by RK. Rather, according to the pleadings, the only contract(s) at issue were for the construction and installation of the lines. Accordingly, the court concludes that the training was integral to the manufacture and installation of the equipment. It would be odd, indeed, for the legislature to deem that the manufacture and installation of equipment in Kansas by a foreign entity did not amount to doing business in Kansas, but training the purchaser on how to use that same equipment did.

Based on the facts at this stage of the proceedings, the court finds that RK was not required to comply with the provisions of K.S.A. 17-7931. Therefore, K.S.A. 17-7307 does not apply to RK. Accordingly, RK is free to maintain its counterclaims against AFS.

**III.    Conclusion**

AFS' motion to dismiss is DENIED.  (Doc. 25.)

IT IS SO ORDERED this 4th day of December, 2018.

> __s/ John W. Broomes_____
> JOHN W. BROOMES
> UNITED STATES DISTRICT JUDGE